Columbus & G. Ry. Co. *et al. v.* Robinson *et al.*

(In Banc. Nov. 25, 1940.)

[198 So. 749. No. 34134.]

676

Owen & Garnett, of Columbus, and R. C. Stovall, of Okolona, for appellant, Columbus & Greenville Railway Company.

Green & Green and Forrest B. Jackson, all of Jackson, for appellant, Standard Oil Company Incorporated in Kentucky.

682

**W. D. Gary,** of Eupora, and **Berry D. Brown,** of Green-wood, for appellees.

684

Argued orally by **Garner Green, Jr.**, for appellant and by **Berry D. Brown**, for appellees.

**McGehee, J.,** delivered the opinion of the court.

There was rendered in the Circuit Court of Webster county a judgment against the appellant, Columbus & Greenville Railway Company, for the sum of $225; the appellant, Standard Oil Company of Kentucky, Incorporated, for the sum of $1,275; and W. C. Hester for the

sum of $25, in favor of the appellees, as the sole heirs-at-law of Robert Robinson, deceased, whose injury and death is alleged to have been caused by the concurrent negligence of the said defendants when he fell or jumped from a truck being driven by Hester as it crossed the railroad spur-track immediately in front of a moving train of the defendant railway company at a point where the highway crossed the tracks in the switch-yard in the Town of Itta Bena, Mississippi; and from which judgment the railway company and the oil company prosecute this appeal.

It is the contention of the appellees that the defendant Hester was a servant and employee of the said Standard Oil Company of Kentucky, and was engaged about the duties of his employment as such at the time of the accident when returning from his work at Itta Bena to the City of Indianola on the occasion in question, and that, as driver of the truck on which Robert Robinson was riding, along with other alleged employees of the oil company, he recklessly and negligently undertook to cross the railroad spur-track ahead of the oncoming train of cars in such manner as to cause the said Robert Robinson to fall from the truck as it passed over the railroad crossing, and to be struck and fatally injured by the train; that the railway company failed to cause the bell to be rung or the whistle to be blown as its engine pushed some ten or twelve gravel cars southward toward the crossing so as to warn the occupants of the truck of the approaching train, and failed to maintain a ''Mississippi Law Stop Sign'' on the north side of the highway and east of the railroad spur-track as the truck approached the crossing, traveling from east to west.

The proof failed to disclose any causal connection between the failure of the railway company to maintain the stop sign and the accident complained of, since it was shown without dispute that the driver of the truck had been crossing the railroad every day at that point, both during the morning and afternoon, for more than fifteen

days immediately preceding the accident, and that he was not only familiar with its location on the highway, but was aware of the fact that he was approaching the crossing on the occasion in question, as he watched for some gravel trucks which were usually present at the intersection of the highway and railroad track and engaged in hauling for a road construction company which had its plant stationed near the highway at that point. Moreover, if his attention was so engaged in looking to the south of the highway for gravel trucks that he failed to see the train of cars coming from the north until he was within a few feet of the same, it is not at all probable that he would have seen the stop sign if it had been in position on the north side of the highway. Hence, it was error, as contended here by the railway company, for the court below to have instructed the jury peremptorily that the failure to maintain the stop sign was negligence, in view of other instructions given, to the effect that if the railway company was guilty of any negligence the jury should find for the plaintiffs.

As tending to establish the alleged negligence of the railway company, the record does disclose some testimony to show that neither the bell was rung nor the whistle blown as the train of cars approached the crossing, but the truck driver testified that these signals could possibly have been given without his hearing them, and one of the witnesses for the plaintiffs testified to the correctness of a signed statement given by him to the railway company a few days after the accident, wherein he stated positively that he heard the whistle blow twice and also heard the bell ring before the train of cars, which were being backed toward the crossing, had reached the highway, and that he saw the flagman stand in the middle of the crossing in an effort to get the truck to stop when it was about one hundred yards away, and that he finally had to get off of the crossing to keep the truck from hitting him. There was other testimony on behalf of the plaintiffs which was merely negative in

character as to whether these warning signals were given, as against the positive testimony of several witnesses that they were given. It must be conceded, however, that such testimony as was not altogether negative in character on that issue was enough to bring about a contradiction sufficient to warrant the submission of the case to the jury. In other words, the proof on that particular issue in favor of the plaintiffs seems to rise some higher than that which was under consideration in the cases of Yazoo & M. V. R. Co. v. Lamensdorf, 180 Miss. 426, 177 So. 50, 178 So. 80; Weiss v. Central R. Co., 76 N. J. L. 348, 69 A. 1087; Culhane v. New York Cent. & H. R. R. Co., 60 N. Y. 133, 137; Keiser v. Lehigh Valley R. Co., 212 Pa. 409, 61 A. 903, 108 Am. St. Rep. 872; Horandt v. Central R. Co., 78 N. J. L. 190, 73 A. 93; Foley v. New York Cent. & H. R. R. Co., 197 N. Y. 430, 90 N. E. 1116, 18 Ann. Cas. 631. The testimony of two or three of the witnesses amounted to more than a mere "I did not hear the bell ring."

We have concluded, however, that the case should be reversed and remanded as against the defendant railway company because of the giving of the following erroneous instructions: (1) That the failure to maintain the stop sign was negligence, and especially where the jury was otherwise instructed that the verdict should be against the said defendant if it was guilty of any negligence, it not being shown that such failure proximately caused or contributed to the accident. (2) That if the jury "believes from the evidence that any witness in this case is mistaken about any material fact as to which he or she may have testified, or that any witness has willfully and corruptly sworn falsely to any material fact, you have the right and it is your duty to disregard the entire testimony of such witness provided you believe such testimony to be untrue;" the instruction being calculated to mislead and confuse the jury as to its duty in regard to the entire testimony of a witness who may have been merely mistaken about any material fact testified to. (3)

That if the deceased Robert Robinson was not at the time of the accident "directing or controlling the movements of the motor vehicle, which was being driven by another, then the negligence of the driver of the motor vehicle, if there was such negligence, cannot be imputed to the said Robert Robinson;" the instruction omitting entirely the qualification that a passenger is required to do something for his own safety and protection, such as to give seasonable warning or remonstrance where the evidence, in the opinion of the jury, may disclose that he is aware of impending danger which the driver has overlooked or has not observed, or to which the driver seems to be indifferent. Columbus & G. R. Co. v. Buford, 150 Miss. 832, 116 So. 817; Gulf, M. & N. R. Co. v. Brown, 138 Miss. 39, 102 So. 855.

It was also error to permit the deputy sheriff to testify that the crossing in question was a dangerous one instead of requiring him to merely state the facts as to its condition and surroundings and then leave it to the jury to determine the question in controversy.

The appellant oil company was entitled to the peremptory instruction requested for the reason that the proof wholly failed to establish either of the following facts: (1) The relation of master and servant between the said oil company and the truck driver; (2) that the oil company furnished the alleged defective truck complained of to transport the employees of W. C. Hester, who was driving the truck, to and from their work; (3) that the oil company had any knowledge of the fact that such employees were being so transported from Indianola to Itta Bena and return; and (4) that the oil company owed the deceased any duty in the premises, since the proof disclosed that he was an employee only of the said defendant, W. C. Hester.

On the contrary, the record shows that on August 9, 1938, the defendant W. C. Hester entered into a contract with the appellant Standard Oil Company of Kentucky, Inc., to do certain work as an independent contractor at a filling station at Itta Bena, Mississippi, according to

plans and specifications, for a contract price of $615.99, and involving the erection of a new wash shed, the installation of a hydraulic lift, the construction of a concrete floor under the shed and out to the street, the installation of a wash trap, and a new auxiliary air tank. The contract was in writing and clearly reserved no supervision or control by the oil company over the employment of the laborers of the contractor nor over the method, manner or time of the performance of their duties. The right to hire and fire the laborers, including Robert Robinson, and the fixing of the wages paid by the contractor was vested solely in the said W. C. Hester. He purchased and paid for all materials used in carrying on the work, such as cement, gravel, roofing, etc., and furnished his own truck for the transportation of his laborers, the oil company furnishing only the manufactured equipment which was being installed. The oil company exercised no control, nor did it reserve the right to control the physical conduct of Hester or his employees in the performance of their duties, or as to the means and methods to be employed in the accomplishment of the net result contracted for. It was merely shown that a district superintendent or manager of the oil company visited the job on occasions to see whether the work was being done according to plans and specifications, but did not undertake to supervise the details or direct the manner in which the work should be done. The relationship of master and servant therefore did not exist under the rule announced under the numerous decisions cited and reviewed in the case of the Texas Company v. Wheeless, 185 Miss. 799, 187 So. 880, and any further discussion of which cases we deem unnecessary in the case at bar.

Some emphasis is laid on the fact that above the caption of the written contract herein referred to, there is contained the following notation: "Estimate No. 7297, Itta Bena, Mississippi. Employee #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." It appears that the estimate number was to designate the particular job let by the oil company under contract for

work of this character to be done, and that the employee number represents the social security number of W. C. Hester. As to why this notation was made on the contract is not fully explained, but this circumstance of itself could not determine the relationship between the oil company and Hester, since his relationship as an independent contractor was definitely fixed by the terms and conditions contained in the body of the written contract. Moreover, it appears that this contractor performed similar work under contract for other oil companies, and that his time was engaged mostly in taking similar contracts for "small jobs" during the period under consideration, although he had formerly done work for this particular oil company by the day and under the social security number hereinbefore mentioned.

From the foregoing views, it follows that the case must be reversed and remanded as against the appellant railway company, and that the same should be reversed and a judgment entered here for the appellant oil company. It is so ordered.

Reversed and remanded as to the railway company; reversed and judgment here for the appellant Standard Oil Company of Kentucky.

**Smith, C. J.,** delivered a concurring opinion.

The evidence does not disclose that Robert Robinson was directing or controlling the driver of this truck at the time of the accident, nor that he had any authority so to do. Neither does it disclose that he was aware of the impending danger nor was negligent in not becoming aware thereof. Consequently, the appellant has no just complaint at the giving of the appellee's instruction as to imputing the negligence of the truck driver to Robinson. The error in this instruction is in giving it at all, for on that issue the appellees were entitled to an instruction peremptorily directing the jury not to charge Robinson with the negligence of the truck driver.